UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GORILLA TECHNOLOGY GROUP INC.,<br><br>Plaintiff,<br><br>-against-<br><br>SHADYSIDE PARTNERS, LLC *DBA* CULPER RESEARCH and CHRISTIAN LAMARCO,<br><br>Defendants. | Case No. 25-cv-_____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Gorilla Technology Group Inc. ("Gorilla" or the "Company"), by and through its attorneys, Pillsbury Winthrop Shaw Pittman LLP, as and for its Complaint against defendants Shadyside Partners, LLC *dba* Culper Research ("Culper") and Christian Lamarco ("Lamarco," together with Culper, "Defendants"), respectfully alleges as follows:

### NATURE OF THE ACTION

1. This action arises from a classic "short and distort" scheme. Short sellers such as Defendants borrow a company's securities, sell those securities short, and then artificially depress the company's stock price by knowingly disseminating materially false, misleading, defamatory, and disparaging information about the company. Once a company's stock price decreases sufficiently, the manipulative traders repurchase and return the borrowed securities, pocketing the difference.

2. Through this Complaint, Gorilla seeks redress from Defendants for their intentional and malicious scheme to artificially manipulate the price of the Company's securities by knowingly publishing and disseminating materially false and misleading information about Gorilla's financial condition, financial reporting, and products and services.

3. These false and misleading statements have caused significant harm to Gorilla, including artificially depressing the price of Gorilla's stock, damaging Gorilla's reputation, delaying the Company's access to funding, threatening certain future projects, impairing prospective business opportunities and relationships, and causing the Company to incur substantial expenses.

4. Culper, led by its founder Lamarco, purports to be an activist short seller that publishes its own "investigative investment research" claiming "to expose companies which have misrepresented their operations, failed to disclose significant risks, misused capital, possess accounting irregularities, or otherwise deceived investors."[1]

5. In reality, Defendants target publicly traded companies by taking short positions on companies' stock and then using their platform to disseminate false allegations of wrongdoing and financial impropriety, baselessly disparaging the quality of their goods and services, and maligning the characters of their leaders—all under the façade of impartial research. Defendants are not benevolent activists; rather, they are market manipulators seeking to profit by tearing down what others have built.

6. Through this litigation, Gorilla seeks compensatory damages to remedy the substantial harm that the Company and its shareholders have suffered, and punitive damages to penalize Defendants for their egregious conduct and deter them from orchestrating additional manipulative schemes against Gorilla and other companies.

---

[1] https://culperresearch.com/about-us.

**JURISDICTION AND VENUE**

7. Subject matter jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332(a)(2) because this controversy is between a "citizen[] of a State and citizens . . . of a foreign state," and the amount in controversy exceeds the sum of $75,000.

8. Personal jurisdiction over Defendants is proper pursuant to the State of New York's Civil Practice Law and Rules §§ 301 and 302, pursuant to Rule 4 of the Federal Rules of Civil Procedure, and under the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States of America. This Court has personal jurisdiction over Defendants because Defendants Culper and Lamarco each purposefully availed themselves of the benefits and protections of the State of New York, transacted business within the State of New York related to the claims herein, committed tortious acts within the State of New York that caused injury to Gorilla in the State of New York, and committed tortious acts outside the State of New York causing injury in the State of New York.

9. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred within this judicial district.

**PARTIES**

10. Gorilla, a Cayman Islands exempted company, with its principal place of business in Taiwan, is a high-growth data analytics company focused on video intelligence, content management, and cyber security appliances, software, and services. Gorilla's common stock trades on the NASDAQ Capital Market stock exchange under the symbol "GRRR."

11. Defendant Culper is a Delaware company with its principal place of business in New York, New York. According to Culper's website, Defendant Culper was founded in 2019 by Defendant Lamarco and is based in New York, New York, as shown below.[2]

> **About Us**
>
> Culper Research was founded in 2019 by Christian Lamarco and is based in New York City. Our name pays homage to the Culper Spy Ring, tasked during the American Revolution by General Washington to report on the movements of British forces. Similarly, we take an exhaustive, investigative approach to investment research. We seek to expose companies which have misrepresented their operations, failed to disclose significant risks, misused capital, possess accounting irregularities, or otherwise deceived investors. In 2021, Culper Research was recognized as a Top 5 activist short seller by Activist Insight.

12. Defendant Lamarco is an individual residing in Chicago, IL. On information and belief, Lamarco, at all relevant times, oversaw, directed, authorized, authored and/or was responsible for the publication of defamatory statements about Gorilla by Culper while Culper operated in New York, New York. Defendant Lamarco also holds a New York state driver's license and may have a residence in or near New York, New York.

### FACTUAL ALLEGATIONS

*Gorilla's Business*

13. Founded in 2001, Gorilla is a high-growth data analytics company focused on video intelligence, content management, and cyber security appliances, software, and services. Specializing in video analytics, network security, and big data, Gorilla supports a wide range of solutions for commercial, industrial, and municipal clients.

14. Over the last approximately 20 years, Gorilla has developed its cutting-edge artificial intelligence technology, with 29 patents granted and 5 pending, which utilizes machine

---

[2] https://culperresearch.com/about-us (emphasis added).

learning and deep learning video analysis algorithms to identify, analyze, and extract information from digital content in order to drive business decisions and enable its customers to improve their operational performance and efficiency.

15.　　Gorilla currently operates in eight countries with products deployed across approximately 600 entities, including governments and government agencies, construction sites, parking facilities, retail stores, and airports. Through continuous innovation, ethical practices, and a steadfast dedication to quality, Gorilla strives to shape a future where every interaction, transaction, and experience is enhanced by the power of technology.

16.　　On December 21, 2021, Gorilla entered into a business combination agreement with Global SPAC Partners Co. ("Global SPAC"). Pursuant to this combination agreement, Gorilla Merger Sub, Inc., a wholly owned subsidiary of Gorilla, merged with and into Global SPAC with Global SPAC surviving the merger. Upon consummation of the merger, Global SPAC became a wholly owned subsidiary of Gorilla, with the security holders of Global SPAC becoming security holders of Gorilla.

17.　　Gorilla is a rapidly growing, global enterprise with existing and prospective partnerships and contracts in various stages of negotiation, staging, execution, maintenance, and expansion. To sustain this growth and take full advantage of these opportunities, Gorilla is consistently expanding its infrastructure, development, operational capacity, and flow of funds from investors.

***Defendants Publish False and Defamatory Statements Regarding Gorilla***

18.　　Defendant Culper, founded in 2019 by Defendant Lamarco, represents itself as a short seller and purports to engage in investigative investment research, publishing and disseminating its reports to the public via its website, www.culperresearch.com.

19. On April 4, 2025, Culper published a report entitled "Gorilla Technology (Gorilla): Fake Products, Fabricated Contracts, Fraudulent Partners, Phantom Offices, and Farcical Financials – a Brazen Fraud" (the "Culper Report"). Exhibit 1. The Culper Report purported to provide the market with Defendants' analysis regarding Gorilla and the Company's securities.

20. On April 4, 2025 at 8:36 a.m. (ET), Defendants disseminated the Culper Report by posting it to the website X (formerly known as Twitter) under the handle @CulperResearch. The post read as follows: "We are short Gorilla Technology Inc $GRRR - the most ridiculous fraud we've written about: fake products, fabricated deals, fraudulent partners, fictitious offices, and phony financials. We think $GRRR should be halted and delisted."[3]



21. This post was viewed 67.5 thousand times as of April 14, 2025 at 3:18 p.m. ET.

22. Defendants' publication and dissemination of the Culper Report were intended to artificially depress the price of Gorilla's stock to enable Defendants to make profitable short sales.

---

[3] https://x.com/CulperResearch/status/1908136499318558970.

23. To this end, the Culper Report was distributed widely by Defendants, who offered it free of charge to investor news services on the internet.

24. By claiming at the beginning of the Culper Report that "all information contained herein is accurate and reliable," Defendants knew and intended that the statements set forth in the Culper Report, including those identified below, would convey a false and defamatory impression of Gorilla to any person reading it or being informed of its contents, and cause unnecessary panic and uncertainty regarding investment in Gorilla.

25. Defendants took no steps to confirm the accuracy or contents of the Culper Report with Gorilla prior to its publication.

26. After publication of the Culper Report, Defendants continued their smear campaign against Gorilla. Defendants have contacted Gorilla's current and prospective customers, employees (both current and former) and partners under false pretenses, in some cases misrepresenting their identities or offering financial incentives in exchange for negative commentary or confidential information about Gorilla. This behavior was coordinated and designed to amplify the damage to Gorilla's reputation and disrupt Gorilla's commercial relationships.

27. On information and belief, shortly after publishing the Culper Report, Defendants took short positions in Gorilla's stock. At the beginning of the Culper Report, Defendants note that they are "likely to immediately transact in [Gorilla's] securities . . . and continue to trade in these securities for an undefined time period thereafter."

*The Culper Report Makes False Statements Regarding the Quality of Gorilla's AI Technology*

28. The Culper Report intentionally misrepresents Gorilla's product offerings by asserting that the Company is merely selling rebranded hardware from other manufacturers and

7

passing it off as Gorilla's technology. The April 4, 2025 post on X and the title of the Culper Report refer to Gorilla's products as "fake products." And the Culper Report states:

> Gorilla claims to offer what it calls "Video Analytics AI hardware" as shown below. Yet a closer inspection of this supposed "AI hardware" reveals that **Gorilla has simply slapped its own logo overtop of a standard Dell desktop PC that anyone can purchase online for less than $500**.
> . . .
> Similarly, Gorilla touts its "contactless AI appliance" but this solution again consists not of any Gorilla-specific technology, but a Telpo camera and a Dell desktop PC which can each be ordered from a number of online retailers.

29. The Culper Report acknowledges that this conclusion was formed based on "a simple reverse image search" of the images provided on Gorilla's website. Solely on that basis, Defendants assert that "Gorilla's 'AI' Technology Appears to Consist Largely of Old Dell Desktop PCs" and that "Gorilla's technological abilities are practically non-existent." Culper Report at 8. These sweeping assertions about the quality and nature of Gorilla's products and Gorilla's technological capabilities are categorically false. Moreover, Defendants' stated reliance on pictures of the exterior of Gorilla's hardware to make such sweeping statements about the core of Gorilla's technology demonstrates, at a minimum, a reckless disregard for the falsity of those statements.

30. Defendants also equate using commercial off-the-shelf hardware with fraud. Commercial off-the-shelf ("COTS") products are ready-made software or hardware available for purchase by businesses for integration with the purchasing company's own systems, software, and/or additional hardware. Use of COTS products is a common and widely adopted practice across many industries. COTS products provide companies with readily available hardware or

software solutions without the need for independent development, thereby saving time and costs, supporting scalability, and facilitating access to a wide range of features.[4]

31.     Defendants disparage Gorilla's technology through willful deception or with a reckless disregard for the truth of their assertions.  Defendants perpetrated this deception with full knowledge of the nature of Gorilla's business and products.  Indeed, on the page immediately preceding the above statements, Culper quotes the following from Gorilla's 2023 Form 20-F: "Our established technologies in edge AI computing, video analytics, and OT security solutions and services form the foundation of our line of product and service offerings . . . . Our proprietary machine learning and deep learning algorithms are foundational to our products and services."

32.     Defendants were aware, or recklessly disregarded, that the value Gorilla provides is in its proprietary AI software—comprising a complex synthesis of video analytics, data fusion, and orchestration technology—none of which is visible through simple external photographs of the Company's hardware.  It is clear from even a cursory review of publicly available information regarding Gorilla that the inherent value in its products is the computing, analytics, and processing capabilities enabled by Gorilla's proprietary software, infrastructure, and services.

33.     Indeed, Gorilla's 2023 Form 20-F describes its proprietary technology as "crucial to [its] success," noting that "Gorilla currently holds 28 patents.  Of the total 28 patents, 14 are located in Taiwan (expiring between 2030 and 2039), 7 are located in China (expiring between 2029 and 2037), 1 is located in the United Kingdom (expiring in 2024), and 6 are located in the United States (expiring between 2031 and 2040)."  Defendants intentionally misrepresent the products offered by Gorilla as "fake" misleading readers about Gorilla's technological value proposition.

---

[4] https://wysebridge.com/cots-or-commercial-off-the-shelf-intellectual-property-terminology-explained.

***The Culper Report Misleads Readers Regarding Gorilla's Contracts with Customers and Future Cash Flow***

34. Gorilla is a global solution provider in security intelligence, network intelligence, business intelligence, and Internet of Things ("IoT") technology. Its proprietary machine learning and deep learning algorithms are foundational to its products and services, which enable Gorilla's customers to securely move, store, and analyze data for use in biometric authentication, account management, device management, business intelligence, and other applications. Its products and services are divided into two segments, namely Video IoT and Security Convergence.

35. Gorilla provides a wide range of AI solutions across sectors such as government and public services, manufacturing, telecom, retail, transportation and logistics, and healthcare and education. The partnerships Gorilla fosters are aimed at expanding its AI solutions across these sectors.

36. Gorilla's projects include implementing comprehensive advanced video analytics at Rama Hospital in Thailand, deploying security convergence smart city solutions in collaboration with the Government of Colombia, and advancing smart city innovations through its alliance with Thames Freeport.

37. The Culper Report asserts that Gorilla "made up" a "$1.8B signed contract with Thailand's electricity authority," and that Gorilla's CEO, Jay Chandan, "insists this is a signed contract." In essence, the Culper Report accuses Gorilla and Chandan of lying to investors and the public regarding one of the Company's most significant contracts.

38. Again, the Culper Report misleads its readers intentionally. Gorilla's own press release relating to this transaction refers to it as an "agreement," not a "contract." Contrary to Defendants' claim, the statement in Gorilla's press release is demonstrably accurate, as Gorilla and Thailand's electricity authority signed a memorandum of understanding memorializing their

10

partnership and agreement to cooperate in exploring how Gorilla can fulfill Thailand's unmet demand for technology solutions that address Thailand's critical infrastructure and digital development priorities. Defendants falsely accuse Gorilla's CEO of defrauding the public and Gorilla's investors about the Company's pipeline of future projects.

***Culper Report Falsely Claims $50-60 Million Deal with Thai Tourist Police Worth Just $20,000-30,000***

39. Defendants assert that Gorilla's 5-year partnership with the Royal Thai Tourist Police "actually consists of just 100 to 150 cameras at $200 per camera, or a total purchase price of $20,000 to $30,000 USD."

40. Defendants incorrectly equate the cost of off-the-shelf cameras with the total value of a strategic, multi-year engagement with a major law enforcement agency. This framing wholly ignores the value of the end product (i.e., AI video analytics, behavioral modelling, object recognition, real-time alert systems, cloud hosted backends, deployment planning (across national tourist zones, integrated with existing command and control systems, and more), and long-term support implicit in the ongoing partnership (i.e., maintenance, firmware upgrades, continuous tuning of AI models, and meeting security standards and GDPR-compliant data governance)). Tourist Police systems encompass various legacy databases, video surveillance silos, and disconnected interfaces, all of which must be mapped to meet the projects' end goals, as well as coordination with telecommunications companies, cloud providers, local systems integrators, and government ministries. Gorilla has planned for a phased national roll-out, accounting for budget cycles, partner integrations, and adjustments for outcome-linked key performance indicators.

41. The estimated value of this partnership factored in a multi-phase, multi-year engagement wherein Gorilla intends to be a long-term partner throughout the orchestration, management, innovation, and compliance stages.

42. Defendants' valuation of a national-scale digital policing initiative at roughly $25,000 is inherently and obviously unreasonable, demonstrating the willfulness of Defendants' false claims and malicious intent.

*Gorilla Has Suffered Significant Damage as a Result of the Culper Report*

43. In the immediate aftermath of the Culper Report, the price of Gorilla's shares decreased by $2.14, or 11.27%, to close at $16.85 per share on April 4, 2025, the day of the report.

44. On April 8, 2025, following publication of the Culper Report, Gorilla's external auditing and accounting firm informed Gorilla that the Culper Report triggered a mandatory review required pursuant to Public Company Accounting Oversight Board (PCAOB) rules, which has served to delay the release of Gorilla's audited financial statements, previously scheduled to be published on April 15, 2025, by two weeks. As a result, Investment Firm A informed Gorilla on April 14, 2025 that the two-week delay of the audit report will delay Gorilla's access to investment capital in the amount of $200 million by roughly one month.

45. Gorilla has incurred substantial expenses in legal, public relations and advisory fees to combat the misrepresentations and panic created by the Culper Report, including approximately $100,000 in legal fees and $68,700 in fees for professional services in public relations and crisis management.

46. Gorilla has also suffered harm to its reputation and goodwill resulting in the withdrawal of an institutional investor, who was in late-stage discussions and represented a potential investment of $50–100 million. The institutional investor explicitly cited the Culper Report as its basis for withdrawing from discussions with Gorilla.

## FIRST CAUSE OF ACTION
### *Defamation (libel per se)*

47. Gorilla repeats and realleges the allegations set forth above in paragraphs 1–46 as if fully set forth herein.

48. On April 4, 2025, Defendants authored, published, and widely disseminated, without privilege or authorization, the Culper Report.

49. The Culper Report contains false statements of fact, so-called "research conclusions" that are false and based upon false or incomplete facts, and defamatory impressions about Gorilla that were endorsed by Defendants. The false and defamatory statements omissions and implications are described above.

50. Defendants authored and caused the Culper Report to be published and disseminated to the public containing false and defamatory statements without sufficient factual bases for making the statements and did so with knowledge of their falsity, or at the very least, reckless disregard as to their veracity.

51. Defendants' false and defamatory statements were read by members of the public, including holders of Gorilla stock, and current and prospective business partners of Gorilla. Given the context in which the false statements were made and the definitive tone of the Culper Report, reasonable investors and customers understood Defendants to be conveying provable facts, not opinions, about Gorilla.

52. Given that Defendants purport to be experienced and credible financial research analysts and claim to have reviewed Gorilla's financial disclosures and other relevant information prior to publishing the Culper Report, Defendants knew, or recklessly disregarded, that the statements were false when made. Defendants reviewed the publicly available information that

make clear that Defendants' statements regarding Gorilla are false. Defendants deliberately ignored the truth.

53.     Defendants' false and defamatory statements have injured Gorilla's business and constitute defamation *per se* because they wrongly accuse Gorilla of untruthfulness, dishonesty, and professional misconduct.

54.     Gorilla suffered harm to its reputation, loss of funding, and other monetary harm, including expenses necessary to respond to the publication, as a result of Defendants' publication of false and defamatory written statements.

55.     Gorilla has suffered, and continues to suffer, damages as a direct and proximate result of the false and defamatory statements and innuendo in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### *Trade Libel*

56.     Gorilla repeats and realleges the allegations set forth above in paragraphs 1–46 as if fully set forth herein.

57.     On April 4, 2025, Defendants authored, published, and widely disseminated, without privilege or authorization, the Culper Report.

58.     The Culper Report contains demonstrably false statements of fact denigrating the quality of Gorilla's goods and services, the existence and scope of Gorilla's existing and prospective business opportunities and relationships, the robustness of Gorilla's global operations and infrastructure, and the veracity of Gorilla's financial accounting and reporting.

59.     Defendants authored and caused these statements to be published and broadly disseminated to the public without sufficient factual bases for making the statements and did so with knowledge of their falsity, or at the very least, reckless disregard as to their truthfulness.

60. Defendants' statements were designed to negatively reflect upon the condition, value, and quality of Gorilla's products and made for the purpose of damaging Gorilla's reputation.

61. As a natural and immediate consequence of Culper's defamatory and false statements, Gorilla has suffered, and continues to suffer, economic damages including approximately $100,000 in legal fees and $68,700 in fees for professional services in public relations and crisis management.

62. These harms cannot reasonably be attributed to any factors apart from the Culper Report.

## PRAYER FOR RELIEF

WHEREFORE, Gorilla respectfully requests that the Court enter judgment in favor of Gorilla and against Defendants, awarding Gorilla:

(a) Compensatory damages against Culper in an amount to be determined at trial;

(b) Punitive damages in an amount to be determined at trial;

(c) Attorneys' fees and costs;

(d) Pre- and post-judgment interest; and

(e) Such other and further relief as the Court deems just and proper.


Dated: April 16, 2025

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: _____
Ari M. Berman
David Oliwenstein
Kristina Sgambati (application for admission forthcoming)
Logan Burkhead (*pro hac vice* forthcoming)
31 West 52nd Street
New York, NY 10019-6131

>
> Tel: (212) 858-1000
> Fax: (212) 858-1500
> ari.berman@pillsburylaw.com
> david.oliwenstein@pillsburylaw.com
> kristina.sgambati@pillsburylaw.com
> logan.burkhead@pillsburylaw.com
>
> *Attorneys for Plaintiff Gorilla Technology Group Inc.*